# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CELY TABLIZO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAS VEGAS,<br><br>Defendant. | Case No. 2:14-cv-00763-APG-VCF<br><br>(Consolidated with 2:14-cv-00887-APG-VCF)<br><br>**ORDER GRANTING IN PART AND DENYING PART DEFENDANT'S SUMMARY JUDGMENT MOTION AND ORDERING SUPPLEMENTAL BRIEFING**<br><br>(ECF No. 29) |

Plaintiff Cely Tablizo contends her former employer, defendant City of Las Vegas, retaliated against her for taking leave under the Family and Medical Leave Act ("FMLA"). She also asserts that she was discriminated against and subjected to a hostile work environment based on her race and national origin.

City moves for summary judgment, arguing that a prior arbitration award in its favor bars re-litigation of the reasons for Tablizo's termination. Alternatively, City argues there is no evidence that City retaliated against Tablizo for using FMLA leave. As to Tablizo's race and national origin discrimination claim, City contends there is no evidence Tablizo was treated differently than similarly situated employees outside her protected class. Finally, City argues there is no evidence to support a claim for intentional infliction of emotional distress.

Tablizo responds that res judicata does not apply because the grievance procedure in the collective bargaining agreement pursuant to which the arbitration was conducted specifically excludes federal statutory claims from its scope. Tablizo contends there are genuine disputes of fact to support her disparate treatment and FMLA claims. Tablizo concedes her intentional infliction of emotional distress claim should be dismissed. However, she notes that City did not move for summary judgment on her hostile work environment claim.

I grant City's motion with respect to Tablizo's claims of disparate treatment and intentional infliction of emotional distress.  I deny City's motion as to Tablizo's FMLA and negligent supervision claims.  Finally, I direct the parties to file supplemental briefing regarding Tablizo's Title VII hostile work environment and retaliation claims.

**I. BACKGROUND**

Tablizo was employed by the City as an accounting technician. ECF No. 32-1 at 2.  Her employment was governed by a collective bargaining agreement. ECF Nos. 29-1 at 12; 32-5.  In early 2010, Tablizo's department was merged with another department, and Sherry Bonnett became Tablizo's supervisor. ECF Nos. 29-1 at 6; 32-1 at 2.  Tablizo was the only Asian-American employee in the unit Bonnett supervised. ECF No. 32-1 at 31.

Shortly after Bonnett became Tablizo's supervisor, Bonnett yelled at Tablizo for allegedly being behind in completing her work. ECF No. 29-1 at 6.  On another occasion, Tablizo was upset that she was made to work as a cashier, which was not within her job responsibilities. *Id.* at 8; ECF No. 32-1 at 2.  Tablizo filed a grievance over having to work outside her job classification, which the City and the union later settled. ECF No. 29-1 at 8, 12-16.

On the morning of May 6, 2010, Tablizo filed her first request for FMLA leave. ECF No. 32-1 at 2.  That afternoon, Bonnett gave Tablizo her first notice of disciplinary action. *Id.*  The disciplinary action was based on a series of incidents in March and April. ECF No. 35-1 at 3-6. On May 20, Bonnett attempted to deny Tablizo leave for a visit to her cardiologist because another employee would be out of the office at the same time to attend training. *Id.*  Tablizo complained to the Finance Director, and her leave was then approved. *Id.*

Tablizo was disciplined twice in 2010. ECF No. 29-1 at 8.  Pursuant to the settlement agreement between the union and City over Tablizo's grievance, the two disciplinary actions against Tablizo were reduced from suspensions to reprimands. *Id.* at 14.

Tablizo was disciplined multiple times and ultimately fired in 2012.  On April 3, 2012, Tablizo received a one-day suspension. ECF No. 29-2 at 27-28.  This suspension was based on an incident that took place on March 29.  Bonnett told Tablizo that her presence at a meeting was not

required and that Tablizo should return to her desk to catch up on her work. *Id.* at 27; ECF No. 32-1. Tablizo allegedly returned to her work area where she made loud and angry comments and later screamed at Bonnett. ECF No. 29-2 at 27.

On April 9, Tablizo was moved to another cubicle that was isolated from other workers. ECF No. 32-1 at 3. The next day, Tablizo emailed Bonnett about taking three days of FMLA leave. *Id.* A few days later, Bonnett told Tablizo that she should "stop getting sick" because her co-workers would not do her job while she was out. *Id.* Bonnett also threatened to take Tablizo to human resources and give her another reprimand because she was behind in her duties. *Id.* During this same time period, Michael Scalzi, director of human resources, emailed Bonnett advising her to "continue adding documentation to [Tablizo's] file." ECF No. 32-3 at 7, 12. He also told Bonnett: "I know that it is painful, but it does take time to build a solid case. Stay the course and don't get discouraged." *Id.* at 12. According to Scalzi, his advice to Bonnett to continue adding documentation to Tablizo's file was consistent with advice he would give to any supervisor. ECF No. 29-4 at 11-13.

On April 17, Tablizo emailed Bonnett and requested they communicate by email because Tablizo did not want to be alone with Bonnett. *Id.* When Tablizo arrived at work, Bonnett began screaming at her and demanded she go to Bonnett's office. *Id.* Tablizo requested a union representative be present, but Bonnett declined that request and told Tablizo she was being insubordinate. *Id.* Tablizo then took FMLA leave from April 17 to May 17. *Id.* at 4.

When Tablizo returned to work, she met with Bonnett and Michael Scalzi, director of human resources. *Id.*; ECF No. 32-3 at 7. Scalzi told Tablizo that she would need to meet with Bonnett alone. ECF No. 32-1 at 4. Tablizo responded that she felt she was being discriminated against and harassed. *Id.* Tablizo claims she requested a transfer that was not granted, but in other testimony Tablizo states that she declined the transfer. ECF Nos. 32-1 at 4; 29-3 at 19.

Tablizo took FMLA leave from May 21 to June 20. ECF No. 32-1 at 4. On June 28, 2012, Tablizo met with the director of her department, Candace Falder, about a potential three-day suspension. ECF No. 29-2 at 30. This suspension was based on incidents in April. *Id.* at 31.

Tablizo allegedly failed to complete tasks on multiple days and did not advise Bonnett that the work was not completed. *Id.* at 31-32. Additionally, on April 17, Tablizo allegedly failed to submit a leave slip for a doctor's appointment and did not tell Bonnett that she would not return to work that day. *Id.* at 31. The three-day suspension was issued July 24. *Id.* at 33.

On September 12, Tablizo received a five-day suspension based on incidents that occurred in August. ECF No. 29-2 at 35, 36, 39. Tablizo allegedly engaged in conduct that would have resulted in City making a duplicate payment in the amount of $2.7 million had her error not been discovered. *Id.* at 36. She also allegedly failed to follow instructions, failed to attend scheduled meetings, and spoke to Bonnett in a disrespectful tone. *Id.* at 36-38.

In November 2012, Tablizo was terminated. ECF No. 29-3 at 2. Her termination was based on events in October when she allegedly failed to perform certain tasks and lied to and argued with Bonnett. *Id.* at 2-4. Additionally, in November Tablizo allegedly was disrespectful to Bonnett, disruptive in a meeting, and failed to follow supervisory directives. *Id.* at 4-5.

According to Tablizo, on November 19 Bonnett assigned Tablizo to work as a cashier, which was outside her job classification. ECF No. 32-1 at 4. The next day, Bonnett told Tablizo to log every minute of her day at work. *Id.* Tablizo responded that she wanted to talk to the union and a private lawyer first. *Id.* Bonnett then yelled at Tablizo in front of another employee and customers. *Id.* Bonnett told Tablizo to go to human resources and that Bonnett was "sick of playing your games." *Id.*

Tablizo appealed her termination and her appeal was denied. ECF No. 29-3 at 9. She then grieved the termination through the collective bargaining agreement's arbitration procedure. *Id.* at 11. The arbitrator denied the grievance, finding Tablizo was terminated for just cause. *Id.* at 13. The arbitrator also found no evidence of discrimination. *Id.* at 15.

Tablizo then filed two lawsuits against City. In the first action, she alleges City retaliated against her for using FMLA leave. ECF No. 1. In the second action, she alleges disparate treatment, a hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964. ECF No. 1 in 2:14-cv-00887-APG-VCF. She also asserts state law claims for negligent

supervision and intentional infliction of emotional distress. *Id.* The two cases were consolidated. ECF No. 17. City now moves for summary judgment.

**II. ANALYSIS**

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Res Judicata**

City argues that the arbitrator's decision that there was no discrimination or FMLA retaliation bars Tablizo from re-litigating those issues. Tablizo responds that the arbitration award cannot bar her claims because the collective bargaining agreement states that the grievance procedure does not apply to federal statutory claims.

The arbitration award has no preclusive effect under the Full Faith and Credit Act, 28 U.S.C. § 1738, because "federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award." *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 629 (6th Cir. 2014) (quoting *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 288 (1984)). Here, nothing in the record shows a court confirmed the arbitration award.

1    Nor does a judicially fashioned rule of claim preclusion apply.  Claim preclusion "bars all
2    grounds for recovery which could have been asserted, whether they were or not, in a prior suit
3    between the same parties on the same cause of action." *Clark v. Bear Stearns & Co.*, 966 F.2d
4    1318, 1320 (9th Cir. 1992).  "[A] claim is not barred by res judicata if the forum in which the first
5    action was brought lacked subject matter jurisdiction to adjudicate that claim." *Id.* at 1321.

6    Here, the parties clearly and unmistakably agreed in the collective bargaining agreement
7    that federal statutory claims were not covered by the grievance process.  The collective
8    bargaining agreement's grievance section states that "Federal and State statutory provisions and
9    the enforcement and propriety thereof are matters of law and/or public policy and are not subject
10   to the grievance procedure hereinafter set forth." ECF No. 32-5 at 4.  Consequently, Tablizo's
11   federal statutory claims could not have been brought in the arbitration, which was part of the
12   grievance procedure.  *See id.* at 4-6.

13   An arbitrator's authority "derives solely from, and is limited by," the parties' contract.
14   *W.J. O'Neil Co.*, 765 F.3d at 630.  Thus, it "makes little sense to allow an arbitration proceeding
15   or award to preclude a claim the arbitrator had no authority to decide." *Id.*  Giving preclusive
16   effect to an unconfirmed arbitration award that covered topics the parties did not agree to submit
17   to arbitration "would force a party, through the doctrine of res judicata, either to arbitrate a claim
18   it had not agreed to arbitrate, or to effectively give up the claim." *Id.*  Accordingly, "an
19   unreviewed arbitration award does not bar a later claim that the parties had not agreed to
20   arbitrate." *Id.* at 632; *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263-64 (2009)
21   (describing a line of Supreme Court cases that "understandably" held that arbitration awards did
22   not "preclude subsequent statutory actions" where the employees "had not agreed to arbitrate
23   their statutory claims, and the labor arbitrators were not authorized to resolve such claims")
24   (quotation omitted).

25   The unconfirmed arbitration award has no preclusive effect because the parties
26   specifically agreed not to arbitrate federal statutory claims.  The arbitrator therefore was not

27
28

authorized to resolve Tablizo's Title VII and FMLA claims. Consequently, I deny City's motion for summary judgment on res judicata grounds.

### B. FMLA Retaliation

City argues Tablizo cannot show it retaliated against her for using FMLA leave because she was granted all the leave she requested and she was terminated for legitimate reasons, including poor performance and insubordination. Tablizo responds that she suffered disciplinary action during the time frame when she was taking FMLA leave, Bonnett told her to quit taking FMLA leave, and Bonnett was documenting her file to build a case to fire her in retaliation for taking leave.

Although styled as a retaliation claim, Tablizo's allegations do not fall under the FMLA's anti-discrimination and anti-retaliation provisions in 29 U.S.C. § 2615(a)(2) and (b). *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). Section 2615(a)(2) prohibits "discriminat[ion] against any individual for opposing any practice made unlawful" by the FMLA. Section 2615(b) "prohibits discrimination against any individual for instituting or participating in FMLA proceedings or inquiries." *Id.* at 1124. The FMLA's anti-discrimination and anti-retaliation provisions do "not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under § 2615(a)(1), the provision governing" interference with the exercise of FMLA rights. *Id.*

Section 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. An employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Bachelder*, 259 F.3d at 1122 (quoting 29 C.F.R. § 825.220(c), emphasis omitted). To show interference with FMLA rights, Tablizo must show, through direct or circumstantial evidence, that "her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Id.* at 1125.

Viewing the facts in the light most favorable to Tablizo, a reasonable jury could find that her FMLA leave was a negative factor in the suspensions and termination. Tablizo has presented

both direct and circumstantial evidence to support her claim.  According to Tablizo, Bonnett told her to stop taking so much sick leave because her co-workers would not do her work while she was out on leave.  Bonnett also testified that she believed Tablizo was inappropriately using FMLA leave and "taking advantage" of the FMLA. ECF No. 29-4 at 26-27.  Each time Tablizo took significant FMLA leave in 2012, she was suspended shortly thereafter.  During this same period, Bonnett and Scalzi were discussing how to properly document Tablizo's file to support terminating her.  A reasonable jury could conclude that Bonnett was looking to fire Tablizo at least in part because she was taking leave that was impacting the work load in Bonnett's department.  Although Bonnett denies that she was bothered by Tablizo taking leave, she admitted that Tablizo's leave increased her own workload. *Id.* at 4-5; ECF No. 32-1 at 18.  Another employee in the department, Paula Adams, confirmed that work would pile up when Tablizo was out. ECF No. 32-4 at 8-9, 20.

City argues that Tablizo was never denied FMLA leave and was allowed to take unpaid leave for a vacation even though she had used up her vacation time. *See* ECF Nos. 29-3 at 19; 29-4 at 2; 29-5 at 5.  But the question is not whether Tablizo was ever denied FMLA leave.  The question is whether, viewing the facts in the light most favorable to Tablizo, a reasonable jury could find that her taking FMLA leave was a negative factor in adverse employment decisions.  A reasonable jury could find it was because (1) Bonnett expressed hostility towards Tablizo taking leave and believed Tablizo was abusing FMLA leave; (2) Tablizo's leave impacted the department and Bonnett's own workload; (3) Bonnett was documenting Tablizo's alleged performance failures to build a case to fire her; and (4) the proximity in time between Tablizo taking leave and her suspensions and termination suggests a causal relationship.

Even if City had legitimate reasons to fire Tablizo, that is not the test for an FMLA interference claim.  Her FMLA leave need only be a negative factor in the disciplinary or

1 termination decisions.[1]  A reasonable jury could find that it was under these facts.  I therefore
2 deny City's motion for summary judgment on this claim.

### C. Title VII Disparate Treatment Based on Race and National Origin

City argues Tablizo cannot show she was treated differently than other employees outside her protected class.  City also argues it has offered legitimate, non-discriminatory reasons for Tablizo's termination and she cannot demonstrate evidence of pretext.  Tablizo responds that she has presented evidence she was treated differently than other employees.  Specifically, she argues that Bonnett required her to log her daily activities, yelled at her, forced her to work outside her job classification, denied a transfer, did not give her adequate notice of alleged work deficiencies and an opportunity to correct them, chastised her for using FMLA leave, and subjected her to unwarranted discipline.

A plaintiff claiming race or national origin discrimination under Title VII may offer direct or circumstantial evidence that a discriminatory reason more likely than not motivated the employer, or alternatively, may proceed under the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 793, 802 (1973). *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).  Under *McDonnell Douglas*, the plaintiff carries the initial burden of establishing a prima facie case of race discrimination. 411 U.S. at 802.  Once the plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*  If the defendant does so, the burden shifts back to the plaintiff to prove the defendant's nondiscriminatory reason is pretextual for race or national origin discrimination. *Id.* at 804.

To establish a prima facie case under the *McDonnell Douglas* framework, Tablizo must show (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, "or other circumstances surrounding the adverse

---

[1] The burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 793, 802 (1973) does not apply to this type of claim. *Bachelder*, 259 F.3d at 1125.

1    employment action give rise to an inference of discrimination." *Fonseca v. Sysco Food Servs. of*
2    *Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (quotation omitted).

3          Tablizo has not presented any direct evidence of race or national origin discrimination. In
4    her opposition, she relies on the *McDonnell Douglas* burden-shifting analysis. ECF No. 32 at 17-
5    20. Under this analysis, the parties dispute only whether Tablizo can show similarly situated
6    individuals outside her protected class were treated more favorably and whether she has shown
7    pretext.

8          Even viewing the facts in the light most favorable to Tablizo, she has not shown a genuine
9    dispute that similarly situated individuals were treated differently. Tablizo identifies the
10   following as showing disparate treatment:

11       (1) Bonnett forced her to log her daily activities;

12       (2) Bonnett subjected her to verbal abuse;

13       (3) Bonnett forced her to work outside her job classification;

14       (4) she was denied a transfer;

15       (5) she was not told about allegations of poor work performance and given an opportunity
16   to correct her performance before being disciplined;

17       (6) Bonnett moved her to an isolated cubicle;

18       (7) Bonnett chastised her for using FMLA leave; and

19       (8) she was subject to unfair and unwarranted suspensions.

20   *Id.* at 18-19. However, other employees also had been required to log their daily activities and
21   had been yelled at by Bonnett. ECF Nos. 29-5 at 2-3, 11; 32-1 at 15-17; 32-4 at 22. Tablizo has
22   presented no evidence that other employees were not also required to work outside their job
23   classification. Moreover, the union and City acknowledged in the settlement agreement involving
24   Tablizo's prior grievance that City had the right to assign employees to temporarily work outside
25   their classification. ECF No. 29-1 at 12-13. With respect to the transfer, the evidence shows
26   Tablizo was the one who rejected it. ECF Nos. 29-3 at 19; 35-18 at 3. She cannot create an issue
27   of fact by contradicting her prior sworn deposition testimony on this topic. *See Kennedy v. Allied*
28

*Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). But I need not make a finding that her affidavit was a sham affidavit with respect to the transfer because even if the contradiction in Tablizo's testimony versus her affidavit is explainable, Tablizo has not shown that other similarly situated employees were given requested transfers.

Tablizo also does not present any evidence that other employees were given notice of poor work performance and an opportunity to correct that performance before being disciplined. It is undisputed that Tablizo was moved to an isolated cubicle, but there is no evidence this was done because of Tablizo's race or national origin. Indeed, the union was aware of and approved moving Tablizo's cubicle. ECF No. 35-19 at 3-4. Tablizo does not explain why Bonnett chastising her for using FMLA leave is related to her race and national origin claim, but even so, she has not presented any evidence that other employees who used FMLA leave were not likewise chastised.

Finally, Tablizo contends she was subject to unfair and unwarranted suspensions in 2012. But Tablizo does not factually dispute that she engaged in the performance failures and misconduct described in the various disciplinary notices. She states that none of the allegations in the disciplinary notices were brought to her attention until she received the notices, and that her "explanations to each allegation during the internal hearings were ignored and never investigated." ECF No. 32-1 at 2. She also refers to the notices as including "false allegations." ECF No. 32-1 at 4-5. But she offers no evidence that she in fact did not engage in the conduct set forth in the notices. Additionally, she presents no evidence that employees with similar performance and conduct issues were not disciplined or received less severe discipline.

In sum, Tablizo has not presented evidence raising a genuine dispute that similarly situated employees outside her class were treated more favorably. She therefore has not established a prima facie case. Even if she has, City has offered legitimate, non-discriminatory reasons for the disciplinary actions taken against Tablizo. Tablizo has not presented evidence raising a genuine dispute that City's proffered reasons were pretext for race or national origin

discrimination. I therefore grant summary judgment in City's favor on Tablizo's race and national origin discrimination claim.

### D. Title VII Hostile Work Environment and Retaliation

Tablizo argues that City did not move for summary judgment on her Title VII hostile work environment claim so that claim remains pending. City responds in its reply that Tablizo has no evidence to support a hostile work environment claim.

Because City did not move for summary judgment on Tablizo's hostile work environment claim, City did not meet its initial burden under Rule 56 of showing it is entitled to judgment on that claim. Additionally, Tablizo has not had an opportunity to respond to the arguments made for the first time in City's reply.

However, I have reviewed the evidence and it does not support a hostile work environment claim. *See, e.g.*, *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (stating that to establish a hostile work environment claim based on race, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment"). The conduct complained of is not sufficiently severe or pervasive to alter the conditions of Tablizo's employment, and, as explained above, there is no evidence of race or national origin discrimination. But before deciding whether summary judgment on this claim is appropriate, I grant Tablizo the opportunity to demonstrate there are genuine issues of fact to support her hostile work environment claim. *See* Fed. R. Civ. P. 56(f). Tablizo may submit additional evidence, if she has any, along with her arguments in support of this claim.

Additionally, Tablizo's complaint mentions retaliation under Title VII. *See* ECF No. 1 at 3 in 2:14-cv-00887-APG-VCF. But in her opposition to City's motion, she does not assert she has a Title VII retaliation claim still pending. I presume this means Tablizo has abandoned her Title VII retaliation claim. If not, then Tablizo must address this claim in her brief as well, providing supporting evidence and argument.

### E. Negligent Supervision

City's only argument related to this claim is a one-sentence statement that without FMLA retaliation or Title VII discrimination claims, there can be no negligent supervision. ECF No. 29 at 15. Because I have denied City's motion on Tablizo's FMLA claim, I also deny City's motion with respect to the negligent supervision claim.

### F. Intentional Infliction of Emotional Distress

Tablizo concedes this claim should be dismissed. I therefore grant City's motion on Tablizo's intentional infliction of emotional distress claim.

## III. CONCLUSION

IT IS THEREFORE ORDERED that defendant City of Las Vegas's motion for summary judgment **(ECF No. 29) is GRANTED in part and DENIED in part**. The motion is granted as to plaintiff Cely Tablizo's claims for race and national origin discrimination and intentional infliction of emotional distress. The motion is denied as to Tablizo's claims for FMLA interference and negligent supervision.

IT IS FURTHER ORDERED that on or before July 18, 2016, plaintiff Cely Tablizo shall file a supplemental brief regarding whether summary judgment should be granted in City's favor on her Title VII hostile work environment and retaliation claims. Defendant City of Las Vegas may file a reply within ten days thereafter. If Tablizo does not file a supplemental brief, I will grant summary judgment to City on these two claims.

DATED this 30th day of June, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE